[Doc. No. 36]

```
        THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
                   CAMDEN VICINAGE

BRENDA JORDEN et. al.,       :
                             :
             Plaintiff,      :
                             :
     v.                      :     Civil No. 09-1715 (JS)
                             :
STEVEN J. GLASS M.D., et. al.,:
                             :
             Defendants.     :
```

## OPINION AND ORDER

This matter is before the Court on the "Motion to Dismiss" filed by defendant Steven J. Glass M.D. (hereinafter "Dr. Glass"). [Doc. No. 36]. The Court has received plaintiff's opposition [Doc. No. 37] and Dr. Glass's reply [Doc. No. 38], and held oral argument. For the reasons discussed herein Dr. Glass's motion is DENIED.

## BACKGROUND

Plaintiff filed her complaint on April 10, 2009, on behalf of decedent, Walter Jorden (hereinafter "decedent"). [Doc. No. 1]. This litigation arises from the defendants' allegedly negligent medical treatment of decedent's medical condition. Dr. Glass is a board certified psychiatrist who at the time of the decedent's death was conducting a "Phase I Clinical Trial concerning the dosage and food effects of a new medicine for schizophrenic patients." See Dr. Glass Brief at 4. Decedent was

1

part of the clinical trial.  Plaintiff alleges she was told the decedent had "some kind of 'panic attack,' 'seizure,' or 'stroke'" at co-defendant Lourdes Medical Center.  See Complaint at ¶19.  Plaintiff further alleges the decedent died, according to the death certificate, of acute myocardial infarction.  Plaintiff is seeking to recover damages for the decedent's allegedly negligent medical treatment and lack of informed consent.

On July 22, 2009, plaintiff served an affidavit of merit prepared by Joyce R. Rubin, M.D.[1]  See Affidavit of Dr. Rubin [Doc. No. 16].  Dr. Rubin's speciality is in general internal medicine.  Id. at ¶1.  Dr. Glass objected to the affidavit on August 4, 2009.[2]  See Certification of Robert G. Yosua ("Yosua Cert.") at ¶6 [Doc. No. 36-1].  On October 5, 2009, plaintiff served an affidavit of merit prepared by Jeffrey Fierstein, M.D.  See Affidavit of Dr. Fierstein [Doc. No. 30].  Dr. Fierstein is board certified in internal medicine and cardiology.  Id.  On October 9, 2009, Dr. Glass raised the same objection to the affidavit of merit of Dr. Fierstein as he did to Dr. Rubin's affidavit.  See Yosua Cert. at ¶9.

Dr. Glass seeks to dismiss plaintiff's claims because

---

[1] Dr. Glass does not challenge the timeliness of Dr. Rubin's affidavit.

[2] Dr. Glass objected to the affidavit on the ground that it was "insufficient pursuant to Fink v. Thompson, 167 N.J. 551 (2001)."  [Doc. No. 36-3].

2

plaintiff's affidavits of merit were not prepared by a doctor who specializes in psychiatry. Dr. Glass argues that the complaint against him should be dismissed for failure to comply with N.J.S.A. 2A:53A-41. Dr. Glass contends the statute requires plaintiff to obtain an affidavit of merit from a psychiatrist, specifically a psychiatrist who deals with phase I clinical trials, and because plaintiff obtained affidavits from an internist and cardiologist, the claims against Dr. Glass should be dismissed. Dr. Glass further argues, "this case is not just a complaint of chest pain. It's a complaint of chest pain within that environment, which is a Phase I clinical trial for the treatment of a schizophrenic patient, with an anxiety disorder." See Transcript of December 4, 2009 Oral Argument ("Tr.") at 18:12-20.[3] In addition, Dr. Glass argues that plaintiff failed to demonstrate that he made a good faith effort to identify an expert in his speciality, and therefore, the waiver exception set forth in N.J.S.A 2A:53A-41c is not applicable.[4]

Plaintiff opposes Dr. Glass's motion arguing his cause of action is not directed to Dr. Glass's speciality in psychiatry

---

[3] Defendant further argues, "what one person thinks is chest pain another person thinks of anxiety and the question is whether that treatment of the board certified psychiatrist, at that time, knowing this patient in those circumstances, was appropriate. And that's the fundamental issue there. Different medical specialities view different medical issues at the same time." See Tr. at 27:15-21.

[4] As will be discussed, because of the Court's reasoning there is no need to address plaintiff's waiver argument.

but rather to the general treatment of chest pains. See Letter Brief at 2. Plaintiff argues that the only claim of medical malpractice that is brought against Dr. Glass relates to the treatment of the decedent's chest pains.[5] Specifically, plaintiff alleges the only claim against Dr. Glass is "regarding ... his failure to treat the decedent for chest pains." Id. Plaintiff further alleges, "Dr. Glass ... failed to act appropriately in the face of Plaintiff's complaints and pain, which led to his heart attack and death." Id.[6] Thus, plaintiff alleges because

---

[5] Because plaintiff is representing that Dr. Glass's malpractice is only related to decedent's "chest pains," plaintiff may be judicially estopped at trial from alleging a different claim against Dr. Glass. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003)(citation omitted)("[t]he basic principle of judicial estoppel ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

[6] Plaintiff alleged several times during oral argument that the only claim against Dr. Glass is for his failure to treat the decedent appropriately when he had chest pains. Counsel argued:

> We have determined that we're not pursuing a case, at this point, any further against Astellas or CRI for the drug toxicity. . . the claim is only against the remaining defendants, which is Dr. Glass and Lourdes, for their failure to treat the decedent appropriately when he had chest pain in a hospital setting. Whether or not he's in the hospital, a doctor's office under a drug study, it doesn't matter, because standard of care for treating somebody with chest pains is the same.

See Tr. at 21:6-17.

> Frankly, the way we looked at it, your Honor, this was not in Dr. Glass' psychiatric ambit of his psychiatric standard of care. Whether he's acting as a

4

his medical malpractice claim is directed to the decedent's chest pains and not to how Dr. Glass conducted his psychiatric clinical trial, affidavits of merit authored by an internist and cardiologist are sufficient  Id.  Plaintiff argues he is not required to serve an affidavit from a board certified psychiatrist specializing in clinical drug trials.  The Court agrees with plaintiff.

**DISCUSSION**

The affidavit of merit statute requires that in any medical malpractice action the plaintiff must provide each defendant with an expert's affidavit within sixty days after the filing of the

---

> psychiatrist.  In this case, it happens to now – he happens to now to be facing a situation where there's one of his patients is complaining of chest pain.  Now, is chest pain outside the realm of psychiatry?  You could argue it is and if it is, you've got other specialists to deal with – who can deal with that, like a cardiologist.  And in fact, what probably would happen is if a person is facing chest pains, severe chest pains and you're in a hospital setting, what are you going to do? You go right to the emergency room and you don't call the psychiatrist, you call in the cardiologist.

See Tr. at 23:5-17.

> [t]he records indicate chest pain in the context of the drug study, absolutely, that's what the facts are in the case.  But that is why we get, we're talking now about chest pains.  I don't care where you are, your Honor, I don't think it's a leap of faith to say that.  You got someone with chest pain.  It wasn't just an Atavan anxiety attack.  And that's what the records are going to show when we get to further discovery.

See Tr. at 28:7-13.

defendant's answer.  N.J.S.A 2A:53A-27.[7]  An affidavit of merit must be signed by an appropriate licensed person.  Id.  In 2004 the statute was amended requiring that, "[i]f the party against whom or on whose behalf the testimony is offered is a specialist . . . *and the care or treatment at issue involves that speciality* . . . the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same speciality . . . . "  N.J.S.A. 2A:53A-41a (emphasis added).  If the defendant is board certified the expert must be similarly board-qualified.  Id.  Under the statute the affiant must have the same specialty or subspecialty recognized by the American Board of Medical Specialties ("ABMS") or the American

---

[7]The statute provides in pertinent part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.  The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27.

6

Osteopathic Association ("AOA"), but only if the care or treatment at issue involves the defendant's ABMS or AOA specialty or subspeciality. N.J.S.A 2A:53A-41a.

Here, Dr. Glass is a psychiatrist. Psychiatry is recognized by the ABMS.[8] Because Dr. Glass is board certified in psychiatry, the Court is required to determine whether the care or treatment at issue "involves" the specialty of psychiatry. N.J.S.A. 2A:53A-41b states in pertinent part:

> b. If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to:
>
> (1) active clinical practice as a general practitioner; or active clinical practice that encompasses the medical condition, or that includes performance of the procedure, that is the basis of the claim or action; or
>
> (2) the instruction of students in an accredited medical school, health professional school, or accredited residency or clinical research program in the same health care profession in which the party against whom or on whose behalf the testimony is licensed; or
>
> (3) both.

For the reasons to be discussed the Court finds that plaintiff's

---

[8] See American Board of Medical Specialities, Psychiatry, http://www.abms.org/Who_We_Help/Consumers/About_Physician Specialties/psychiatry.aspx (last visited March 4, 2010).

malpractice claim against Dr. Glass does not "involve" Dr. Glass's psychiatric specialty.  Therefore, Dr. Glass's motion will be denied.

The issue before the Court was recently addressed in two unpublished New Jersey Appellate Division cases.[9]  These cases stand for the proposition that not every alleged malpractice of a specialist "involves" his or her specialty.  In other words, there may be appropriate circumstances where a general practitioner is an appropriate licensed person to issue an affidavit of merit directed to the care provided by a specialist.

In <u>Harbeson v. Underwood-Memorial Hospital</u>, 2009 WL 1766598 (N.J. Super. App. Div. June 24, 2009), the Court held that a board certified anesthesiologist was not acting in his capacity as a specialist when he allegedly administered an antibiotic to guard against infection.  <u>Id.</u> at *8.  In that case the plaintiff argued the duty to guard against infection is a, "general medical duty transcend[ing] the bounds of each speciality at play in the surgical procedure."  The Court agreed with the plaintiff and held that the anesthesiologist could not rely upon N.J.S.A.

---

[9]Although the Court recognizes that the cited unpublished opinions are not controlling, the Court finds them persuasive. See <u>Caissie v. City of Cape May</u>, 619 F. Supp.2d 110, 124 (D.N.J. 2009) (finding that two unpublished cases are not binding but help inform the court's decision); <u>New Hampshire Ins. Co. v. Diller</u>, – F.Supp.2d —, 2009 WL 5171866 (D.N.J. 2009) (finding that an unpublished opinion is not binding precedent but still supports the Court's decision because it was consistent with settled New Jersey precedent).

2A:53A-41a to dismiss the case because he was performing a role that did not "involve" a specialty or special expertise. Id. Since the alleged malpractice claim related to a general rather than a specialized medical procedure, the Court held that the anesthesiologist's conduct should be measured against a general practitioner.  Id.  The Court reasoned that its holding was consistent with N.J.S.A 2A:53A-41b because if the care provided was outside the scope of the health care provider's speciality, the provider was functioning as a general practitioner utilizing the general skills and knowledge he or she acquired in medical school and as an intern. Id. at 9.[10]  Similarly, Dr. Glass's treatment of the decedent's chest pains involves the application of general medical principles, not specialized psychiatric care.

Similarly, in Estate of Harrington v. Tsai, 2007 WL 987158 (N.J. Super. App. Div. April 4, 2007), the Court held that an internist specializing in gastroenterology was qualified to issue an affidavit of merit concerning the standard of care applicable to an ob-gyn specialist. In Harrington, the plaintiff filed a complaint alleging that her ob-gyn physician deviated from the

---

[10] The Court also held that it would not be reasonable to construe N.J.S.A 2A:53A-41b as only applying to "general practitioners" (practitioners without a speciality) because it would eliminate any required qualifications for an affiant or expert opining regarding a deviation by a health-care provider. In addition, the Court held that applying N.J.S.A. 2A:53A-41b to the anesthesiologist is consistent with the Legislature's findings and declarations respecting its intent to reform the State's tort liability system governing medical malpractice. Harbeson, 2009 WL 1766598, at *9.

9

accepted standard of medical care by failing to refer the decedent to a specialist concerning a report which diagnosed the decedent with a porcelain gallbladder.  The plaintiff submitted an affidavit of merit prepared by a gastroenterologist.  In support of its finding that the affidavit was adequate the court held, "[t]he issue here did not relate to some arcane aspect of gynecological practice but simply to whether a porcelain gallbladder raised sufficient concerns to warrant a follow-up." Id. at *3.  The Court noted that the purpose of the affidavit of merit statute is not to eliminate malpractice cases in general but to identify meritless suits at an early stage. Id.  The Court held that this purpose would not be furthered by dismissing the suit if the gastroenterologist was "well-qualified by education and experience" and he was familiar "with the standards of care for the follow up and treatment of a patient with porcelain gallbladder." Id.

   Dr. Glass argues that he is a board certified psychiatrist and the care and treatment at issue involves the "selection and monitoring of schizophrenic patients in a Phase One Clinical Trial and Food Effects Study." See Reply at 6.  Thus, Dr. Glass concludes, plaintiff is required to serve an affidavit of merit prepared by a board certified psychiatrist.  However, Dr. Glass has not submitted evidence that the treatment of a patient's chest pains while involved in a phase I clinical drug study is different than the treatment afforded to an ordinary patient with

chest pains.  The Court does not accept the argument that regardless of the nature of plaintiff's medical malpractice claim that only a psychiatric specialist can address Dr. Glass's standard of care.  The Court finds that plaintiff's malpractice allegation, that the decedent's chest pains were not properly treated, fall under the general skill and knowledge of a general practitioner.

Dr. Rubin's affidavit of merit indicates that she has been practicing medicine since graduating from medical school in 1981 and her residency then fellowship in 1986, with a "speciality in General Internal medicine, in a busy university-based group practice."  See Affidavit of Dr. Rubin at ¶1.  Based upon this background the Court finds that Dr. Rubin satisfies the requirements in N.J.S.A. 2A:53A-41b because she engages in an active clinical practice as a general practitioner.  Thus, the Court finds that plaintiff submitted a competent affidavit of merit.

Dr. Glass relies on Ryan v. Renny, M.D. ("Renny"), 975 A.2d 971 (N.J. Super. App. Div. 2009), to support his argument but the case is distinguishable.  In Renny, plaintiff alleged that Dr. Renny, a board certified internist and gastroenterologist, negligently performed a colonoscopy.  Plaintiff submitted an affidavit of merit prepared by a surgeon who was not board certified in gastroenterology and who had not performed a colonoscopy in several years.  Id. at 972.  The Court held that

plaintiff's affidavit was not adequate because it was not executed by a physician who practiced in gastroenterology. Id. at 974. The Renny decision is not controlling in this case.  As a general matter although many internists perform sigmoidoscopies, most are not trained to perform full colonoscopies. Gastroenterologists have specific training in all endoscopic procedures and routinely perform colonoscopies.[11]  Thus, when a gastroenterologist performs a colonoscopy she is utilizing her special knowledge rather than the general skill and knowledge she acquired in medical school. This contrasts with this case where plaintiff's malpractice allegation directed to the treatment of the decedent's chest pains does not involve a specialized subject matter.   The Renny decision is also not controlling because it focuses on the waiver provision in N.J.S.A. 2A:513A-41c.  In contrast, this decision focuses on N.J.S.A. 2A:53A-41a and 41b.[12]

---

[11] See http://youtotalhealth.ivillage.com/who-should-perform-colonoscopy.html (last visited March 4, 2010).

[12] Since the Court rules that Dr. Rubin's affidavit of merit is adequate there is no need to also address the issue of the adequacy of Dr. Fierstein's affidavit.

**CONCLUSION**

Accordingly, for all the foregoing reasons,

IT IS HEREBY ORDERED this 5th day of March 2010 that the Motion to Dismiss filed by Stephen J. Glass, M.D. is DENIED.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge
